**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| Christopher M. Hardy, | ) | Case No. 24 B 10769 |
| | ) | |
| Debtor. | ) | Hon. Michael B. Slade |
| | ) | |

**MEMORANDUM OPINION**

The sole question presented by this contested confirmation dispute is whether debtor

Christopher Hardy's "household" size is one or two for purposes of calculating the "current

monthly income" attributable to him under Section 707(b)(2)(A) of the Bankruptcy Code.  Hardy

is married and he and his wife cohabitate.  As an intuitive matter, it is hard to see how a married

person living with his or her spouse has a "household" of only one person, and any dictionary

definition would exclude that view.  If the Bankruptcy Code defined "household" to suggest that

a married person living with his or her spouse nonetheless has a household of one under these

circumstances, of course, I would enforce the Code as written.  But it does not.  Moreover,

neither the language of the Bankruptcy Code nor the existing case law on the topic persuades me

to exclude Hardy's wife from his "household" for purposes of calculating CMI.  Instead, under

the facts presented here, and regardless of the legal test employed to define "household," I agree

with the Debtor that his "household" consists of two people, so I will overrule the objection of

the chapter 13 Trustee, Glenn Stearns (the "Trustee").  For reasons discussed below at footnote 3,

I am not prepared to confirm the proposed plan at this time, so the confirmation hearing remains

set on April 9, 2025 at 10:30 a.m.

I.

Hardy works at Exelon.  His wife is a teacher.  They were married in June 2024, approximately a month before the petition date.  (Dkt. No. 41-1, Marriage Certificate)  Despite the proximity between the wedding day and the bankruptcy filing, no party questions the validity of the marriage or suggests that Hardy got married anticipating this bankruptcy case and hoping for lower chapter 13 plan payments than he might have to make as a single man.

Hardy's wife, Lindsay, reports income that matches her personal monthly expenses. (Dkt. No. 41-2, Report on Lindsay's Personal Expenses)  Moreover, Lindsay provided an affidavit swearing that "None of my income is regularly paid for [the Debtor's] household expenses, as I use my income to pay my personal expenses."  (Dkt. No. 32-1, L. Hardy Aff., ¶ 4)  This affidavit is the premise for the Trustee's suggestion that, as a result, Hardy's marriage to Lindsay had no impact on his financial situation and thus his marriage should have no impact on how disposable income for monthly plan payments is calculated under the Bankruptcy Code.

While one can see the logic in the Trustee's argument, the reality is that marriage has consequences, legal and economic.  In addition, simply looking at the undisputed evidence of "Lindsay Hardy Personal Expenses" upon which the Trustee relies, it is hard to ignore that one thing is missing: her cost of housing.[1]  The Trustee suggests that this reflects the fact that "the debtor has been continuously paying the same amounts for housing expenses that he was prior to his marriage" and thus his "financial circumstances are unchanged by his marriage."  (Dkt. No. 43, Trustee Reply, p. 1) Perhaps so, but this fact illustrates the reality that married couples who live together -- even those who try to keep their finances separate -- are intertwined in numerous ways, some of which are easier to infer from a paper record than others.  Mrs. Hardy swears that

---

[1]  According to his most recent filing, Hardy expects to pay $1,276 per month to mortgage lenders during the plan period, see Dkt. No. 26, Official Form 122C-2, p. 2.

she uses her income to pay her personal expenses, but the housing example demonstrates, beyond doubt, interdependence, as Mr. Hardy's income is *also* used to pay some of her expenses.

It appears to me that Hardy filled out the required bankruptcy forms, most importantly Official Form 122C, in good faith. When answering Question 5 on page 1 of Official Form 122C-2, "The number of people used in determining your deductions from income," Hardy was presented with the following prompt: "Fill in the number of people who could be claimed as exemptions on your federal income tax return, plus the number of any additional dependents whom you support. This number may be different from the number of people in your household." In response, Hardy wrote "2 Living Housing," reflecting the reality that he lives with his wife and has no other dependents.[2] That answer drove a number of the "deductions" permitted by Section 707(b)(2)(A) for Hardy, given that he is an above-median Debtor, and (the Trustee avers, without providing a calculation) led to a larger number when answering Questions 38 and 42, "Total of all deductions allowed under 11 U.S.C. 707(b)(2)(A)," than if he had filled in "1" as his household size. The end result was that Hardy calculated his monthly disposable income as $1,995.36. (Dkt. No. 41, Official Form 122C-2, p. 7)[3]

Hardy's proposed Plan (Dkt. No. 14) contains no nonstandard plan provisions (*id.* § 8), appears fairly standard in all respects, and proposes to make payments of $1,995 per month for 60 months to be distributed to his creditors. Hardy proposes to make plan payments directly to

---

[2] When computing taxable income, under certain circumstances, the taxpayer can claim a personal exemption and an "additional exemption for the exemption amount for the spouse of the taxpayer." 26 U.S.C. ¶ 151(b); 26 C.F.R. § 1.151-1.

[3] This disposable income amount is based on the form 122C-2 filed on the petition date (Dkt. No. 6), which was attached to Hardy's response brief filed in support of confirmation as Exhibit C (Dkt. No. 41, Debtor Response Br., at Exhibit B) I note, however, that the Debtor amended form 122C-2 on September 23, 2024 (*see* Dkt. No. 26), reporting a lesser monthly disposable income of $1,847.73. Both the original and amended forms report two as the number of people used in determining deductions. The payments under his proposed plan are based on the larger amount in the original form. So, I am prepared to overrule the Trustee's objection to confirmation based on the "household" size, but I am not prepared to confirm the plan at this time given the inconsistencies in the disposable income amount between the most recently-filed form 122C-2 and the proposed plan.

3

the trustee (*id.* § 2.2) and advises that the total amount of anticipated payments is $119,700 (*id.* § 2.4).  He proposes to continue making separate payments directly to the secured lenders holding mortgages on his home and a lien on his car, as he has done before and during this chapter 13 case.  (*Id.* § 3.1)  To satisfy the best interests test, Hardy advises if the case were converted to chapter 7, general unsecured claims would receive only $23,280 total, far less than he has proposed to pay general unsecured creditors under his plan.  (*Id.* § 5.1)

The proposed plan was filed on August 5, 2024.  (*Id.*)  The Trustee held a Section 341 meeting of creditors on or about August 19, 2024.  (Dkt. No. 15)  Following the Section 341 meeting, Hardy amended Schedules E&F (Dkt. No. 18), filed an amended declaration about his schedules (Dkt. No. 21) and amended Schedules I&J (Dkt. No. 24), while finalizing his Form 122C (Dkt. Nos. 25-29).  About forty potential creditors received notice of the Section 341 meeting, *see* Dkt. No. 11, including several banks, and one of them filed an appearance, *see* Dkt. No. 13.  But no creditor filed an objection to confirmation of the proposed plan.

II.

All of this occurred prior to my appointment to the bench effective November 25, 2024, when the case was assigned to me.  (Dkt. No. 36)  At that point, the Trustee filed a short objection to confirmation, claiming that "[s]ince the debtor's spouse is not a dependent nor is reliant on the debtor for any support, her inclusion in the household size is improper solely because she merely rooms with the debtor," and asking me to find, under the Fourth Circuit's "economic unit" test, *see Johnson v. Zimmer,* 686 F.3d 224, 236 (4th Cir. 2012), that Hardy's "household" size should be one.  (Dkt. No. 37, Trustee Obj. ¶¶ 6-10)

The Trustee claims that "[e]liminating the improper size assertion and reducing it to one will result in additional positive disposable income that would be required to be paid to

4

creditors," and that because (in the Trustee's view) the Debtor is not committing all of his disposable income to the plan, the plan cannot be confirmed because it was not proposed in good faith. (*Id.* ¶¶ 11-13)  The Debtor filed a response, walking me through the way he filled out the Official Forms to arrive at his CMI and describing how, whether I adopted the "economic unit" test or another test applied by bankruptcy courts to determine household size, he properly used a "household" size of two (he and his wife).  (Dkt. No, 41, Debtor Response Br.)  The Trustee filed a short reply, consistent with his original objection.  (Dkt. No. 43, Trustee Reply)

I originally scheduled an evidentiary hearing because I believed there were likely facts in dispute and because I would benefit from more detailed information and discussion about the case in making this decision.  (Dkt. No. 40)  But the parties jointly contacted me and advised me that they did not want an evidentiary hearing, instead asking me to decide the matter on the papers.  Thus, the Trustee waived all objections to the evidence introduced by the Debtor, including his filled-out official forms, and waived his right to cross-examine the Debtor or his wife, while both parties waived the right to introduce additional evidence.  (Dkt. No. 46)  Consistent with the parties' wishes, I entered an order striking the evidentiary hearing and taking the matter under advisement.  (*Id.*)  This ruling is thus based on the evidence submitted to me in writing by the parties and my analysis of it.

### III.

"Chapter 13 of the Bankruptcy Code provides bankruptcy protection to individuals with regular income whose debts fall withing statutory limits."  *Hamilton v. Lanning*, 560 U.S. 505, 508 (2010) (internal quotations omitted).  Unlike chapter 7 debtors whose nonexempt assets are liquidated by a chapter 7 trustee to pay creditors with allowed claims, the chapter 13 debtor can keep his assets as long as he pays his creditors from his future income under a court-approved

5

plan.  *Id.*  The purpose of chapter 13 relief, therefore, is to "allow the debtor a fresh start where it is possible to do so without liquidating [his] assets . . ., while at the same time ensuring that the debtor devotes all of [his] disposable income during the life of the plan to repaying creditors." *Germeraad v. Powers*, 826 F.3d 962, 971 (7th Cir. 2016).

Section 1325(b)(1)(B) of the Bankruptcy Code conditions approval of a proposed plan on the debtor's promise to use all of his disposable income during the plan period to make plan payments.  Disposable income, in turn, is calculated in accordance with section 1325(b)(2) of the Bankruptcy Code.  The calculation can get complicated and is performed on official bankruptcy forms.  In general, disposable income is the debtor's current monthly income (CMI) less amounts reasonably necessary to be expended for his and his dependent(s)' maintenance or support.  The "amounts reasonably necessary" depends on whether the debtor makes more or less than the median family income.

The parties here agree Hardy is an above-median debtor.  His CMI, therefore, is calculated in accordance with section 707(b)(2)(A), which uses standardized deductions based on Internal Revenue Standards.  *See In re Moss*, 591 B.R. 338, 341 (Bankr. N.D. Ill. 2018).  "The determination of how to calculate a debtor's 'amounts reasonably necessary to be expended' is based, in part, on the size of the debtor's 'household'." *Johnson*, 686 F.3d at 228.  Indeed, "[t]he entire purpose of identifying a debtor's household size is to use that number to determine his or her financial obligations and ability to pay." *Id.* at 237.  In simple terms, the larger the household and its needs, the less of the debtor's income is available to distribute to creditors under the plan.

The word "household" is not defined in the Bankruptcy Code.  All dictionary definitions of the term that I have located, however, would include two spouses living together.  *See, e.g., Household*, Black's Law Dictionary (12th ed. 2024) ("A family living together.  A group of

people who dwell under the same roof."); New Oxford American Dictionary 843 (Angus Stevenson & Christine A. Lindberg eds., 2010) (defining "household" as "a house and its occupants regarded as a unit"); https://www.merriam-webster.com/dictionary/household (last visited Mar. 17, 2025) ("Those who dwell under the same roof and compose a family"); https://dictionary.cambridge.org/us/dictionary/english/household (last visited Mar. 17, 2025) ("a group of people, often a family, who live together").

I have reviewed the case law where courts apply the statutory term "household" to various situations. *See, e.g., In re Johnson,* 2011 WL 5902883, at *1-*3 (Bankr. E.D.N.C. July 21, 2011 (affirmed in *Johnson*, 686 F.3d at 236); *In re Skiles*, 504 B.R. 871, 877-879 (Bankr. N.D. Ohio); *In re Osei,* 389 B.R. 339 (Bankr. S.D.N.Y. 2008); *In re Trainor*, 2014 WL 7338901, at *2 (Bankr. N.D. Ind. Dec. 22, 2014). *Skiles* provides a good summary of the competing approaches: "heads-on-beds," which simply counts "all the people who occupy a housing unit," *Skiles*, 504 B.R. at 877 (citing, among others*, In re Smith*, 396 B.R. 214, 216 (Bankr. W.D. Mich. 2008); "IRS-dependent," which includes within the household only those individuals the debtor counts as a dependent on his or her tax return, *Skiles,* 504 B.R. at 878 (citing, among others, *In re Napier*, No. Civ.A. 06-2464-JW, 2006 WL 4128358, at *2 (Bankr. D.S.C. Sept. 18, 2006); and the "economic unit" approach that determines the household size based on the "financial intermingling or interdependency" between the debtor and other persons, *Skiles*, 504 B.R. at 879, 884 (citing, among others, *In re Morrison*, 443 B.R. 378, 388 (Bankr. M.D.N.C. 2011)).

The Seventh Circuit has not had a chance to express a view on the question, and the only circuit level opinion on the issue is *Johnson. See Johnson,* 686 F.3d at 237-38 (adopting the "economic unit" test, finding it flexible, and consistent with the language of section 1325(b) and the "ultimate purpose of the [Bankruptcy] Code"). Upon reviewing the statutes (which do not

7

clearly answer the question), the Official Forms (which must be used, and provide a debtor much flexibility on this issue), and the caselaw, I am persuaded that Congress most likely intended bankruptcy courts to apply something like the "economic unit" test, looking to the details of the debtor's factual situation and determining, in the court's best judgment, how many other persons' finances are intertwined at least to some degree with the debtor's. But I also agree with my predecessors who have considered the issue and been puzzled by the imprecise statutory structure: "[w]e should not kid one another. We are just doing the best we can. The search for a one-size-fits-all numerical straitjacket test is at best imprecise." *Skiles*, 604 B.R. at 886.

Here, regardless of what test is applied, it is hard to see how Hardy's wife would not be part of his "household" for a number of reasons. First, none of the parties has cited a single case in which a debtor's cohabitating spouse was not counted in a debtor's household size. That is not surprising. Instead, the cases cited by the parties involve more complex family situations and dynamics where courts analyze whether to count adult children and grandchildren living with the debtor, *see In re Brown*, 546 B.R. 642, 650 (Bankr. E.D.N.C. 2016); children of divorced couples living partially at one home and partially elsewhere, *see In re Trainor,* No. 13-09818-JMC-13, 2014 WL 7338901 (Bankr. S.D. Dec. 22, 2014); step-children living at home part of the time, or more distant relatives or other relations for whom the debtor provides some (varying) amount of shelter and/or other support, s*ee Johnson*, 686 F.3d at 226. The analysis provided in those cases is not particularly helpful in assessing what, here, is a far more straightforward situation: a married couple, with no children, living together in one house with no one else. But critically, in each of the cases cited by the parties, regardless of their complexity or the degree to which the debtor's spouse financially contributed to the debtor's finances, the debtor's cohabitating spouse (if there was a spouse) was considered part of the debtor's "household." Again, even where a

8

non-debtor spouse tries to use his or her income to pay most (or even all) of their personal expenses, it is challenging to suggest that such person is not part of the debtor's "economic unit," at least to some degree. That's probably why no judge has excluded a cohabitating spouse from the "household." I will not be the first.

Second, the Bankruptcy Code does, in other places, explicitly address situations where a debtor is married but has finances separate from his or her spouse. 11 U.S.C. § 707(b)(7)(B). This demonstrates that when Congress wants to separate a debtor from his spouse for purposes of a calculation under the Bankruptcy Code, it knows how to do so (and did not when defining "household"). *See BFP v. Resolution Trust Corp.*, 511 U.S. 561, 537 (1994) (instructing, "it is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of statute but omits it in another."). Further, even in this (inapplicable) part of Section 707(b), Congress provided that the currently monthly income of the debtor's spouse is not considered (for that particular calculation) only if the couple is separated. Nothing in the Bankruptcy Code suggests to me that Congress contemplated the potential for a married couple who live together not being considered part of the same "household."

Third, the Official Forms strongly suggest that debtors should count in these calculations their cohabitating spouse. Debtors are required to use the "Official Forms prescribed by the Judicial Conference of the United States." Fed. R. Bank. P. 9009(a). The Advisory Committee Notes report that Form 22C-2 (later renumbered 122C-2) was modified in 2010 to delete references to "household" and "household size," instead using "substituted terms – 'number of persons' . . . [which is] defined in terms of exemptions on the debtor's federal income tax return and other dependents." Current form 122C-2 thus asks the debtor to report "[t]he number of people used in determining your deductions from income" by filling "in the number of people

9

who could be claimed as exemptions on your federal income tax return, plus the number of any additional dependents whom you support." A spouse with whom the Debtor lives certainly *could be* claimed as exemption. *See* 26 U.S.C. ¶ 151(b); 26 C.F.R. § 1.151-1. Hardy therefore appropriately filled in himself and his wife on Form 122C-2 (because he "could claim" her as an exemption), and no one else because he has no additional dependents he supports, as the number of people he used to determine deductions from his income.

Finally, I am not persuaded by the Trustee's interpretation of the Hardys' living situation. It is highly relevant that the Debtor pays housing costs for he and his wife. I agree with the Debtor on this point—Mr. and Mrs. Hardy live together, Mr. Hardy pays for housing, and "[t]heir shared housing costs alone create economic interdependence – even if Lindsay contributes nothing to these costs, this arrangement affects Christopher's necessary household expenses and the couple's overall economic functioning." (Dkt. 41, Debtor Res. Brief, at p. 3-4)

It is possible that I could come to a different conclusion in another case presenting slightly different facts. But here, regardless of what test is applied, I believe that the Debtor's cohabitating spouse is part of his "household" for purposes of the relevant calculations under the Bankruptcy Code. So, I am overruling the Trustee's objection. The confirmation hearing on the proposed plan remains set, however, on April 9, 2025, at 10:30 a.m. so the Debtor can clarify the remainder of his income calculation prior to confirmation of a plan. A separate order will issue.

Signed:   March 18, 2025                    By:   _____

MICHAEL B. SLADE
UNITED STATES BANKRUPTCY JUDGE